# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| LORINDA K. SMITH, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 08-cv-1245 |
| ROBERT M. HUSTON, ERIC RASMUSSEN, and KELLY VANSAGHIS, | ) |
| Defendant. | ) |

## O P I N I O N and O R D E R

Before the Court is the Motion for Summary Judgment filed by Defendants Robert M. Huston, Eric Rasmussen, and Kelly Vansaghis (Doc. 31). The Motion is GRANTED.

### BACKGROUND

Plaintiff alleges that while she was being transported by correctional officers to the Tazewell County Jail, from the Cook County Jail in Chicago on September 28, 2007, she was injured in a car accident. At the time of the accident, the vehicle in which she was riding (in the rear) was being driven by Defendant Eric Rasmussen with Defendant Kelly Vansaghis riding in the front passenger seat. Plaintiff alleges that the officers ignored her complaints of injury and pain and that they did not provide her with any medical assistance. Upon reaching the Tazewell County jail, Plaintiff allegedly repeatedly requested medical attention which she did not receive. When she did see a doctor at the jail on October 24, 2007, she alleges that she did

not receive adequate medical attention. It should be noted that Plaintiff is not suing for any treatment received at the jail but is only suing the officers who transported her. However, in addition to suing the individual correctional officers, Plaintiff also is suing Sheriff Robert Huston in his individual and official capacity. Plaintiff alleges that the individual correctional officers were deliberately indifferent to her serious medical need and that the Sheriff condoned a policy of ignoring the medical needs of pretrial detainees.

The following facts are undisputed. When Plaintiff was being transported to the Tazewell County Jail, on an arrest warrant, she was placed in a transport belt, which included leg shackles and handcuffs at her side, and placed in the rear of the vehicle. (Def. Statement of Undisputed Material Facts "DSUMF" 17). She was not secured with a seatbelt. (DSUMF 18). The car was being driven by Officer Rasmussen and Officer Vansaghis was sitting in the front passenger seat. The officers stopped for fuel at a gas station, and they were involved in an accident with another car. (DSUMF 19).[1] At the time of the accident, the cars were in a parking lot and were travelling at a speed of less than 10 miles per hour, and probably less than 5 miles per hour. (DSUMF 20). As a result of the accident, Plaintiff struck her head and knee on the plexi-glass or metal between the front and back seats of the car. (DSUMF 21). According to Plaintiff, the following exchange occurred immediately after the accident:

---

[1] In disputing this material fact, Plaintiff does not dispute that an accident occurred or where it occurred but rather disputes the characterization that the accident was minor.

Q. So your knees and your head hit the partition between the front and back seats?

A. Correct.

Q. What did you do after that?

A. I said, "Excuse me." I said, "God damn. You were going too fast." No. I said – I'm trying to recall exactly how I said it. I think I said – I'm just trying to recall because I know it was a cuss word. I said, "Shit. You hit that car hard." I don't remember how I said it but something to that. Then I got back up there. Then he told me to shut the F up and sit back.

Q. Who told you that?

A. The other guy, not Rasmussen . . . told me to sit back and shut the F up, so I didn't say another word the rest of the trip.

(Lorinda Smith Dep. p. 26).

Plaintiff did not make any complaints of injuries nor did she request medical care throughout the rest of the trip. (DSUMF 24). Neither Rasmussen nor Vansaghis asked Plaintiff if she was "ok."(Smith Dep. p. 27).

Upon arriving at the Tazewell County Jail, an intake questionnaire was filed out by jail personnel. Plaintiff does not recall what questions were asked including whether she was asked about any injuries or medical problems. According to the questionnaire, the only medical condition listed is asthma, which Plaintiff indicates she has. It is undisputed, however, that Plaintiff was asked whether she had any head injuries, and Plaintiff denied that she had any such injuries. (DSUMF 30). Plaintiff was given, and signed, a notice regarding healthcare services which stated that she would not be denied services because of an inability to pay. (DSUMF 31). Plaintiff also knew that she would request medical care by completing a Detainee

Request Form. (DSUMF 33).[2] For four days after her arrival at the Tazewell County Jail, and while she was housed in the holding cell, Plaintiff did not request medical care and apparently elected to sleep on the concrete floor. (DSUMF 34).

The first time that Plaintiff requested medical attention was on October 5, 2007. (DSUMF 35). In this request, Plaintiff only sought balm for chapped lips; there is no indication that she sought medical care for pain. (DSUMF 36). On October 7, Plaintiff was advised by Nurse Randy McClellan that she could purchase balm from the commissary. (DSUMF 38).

The second medical request was made on October 7, 2007. In this request, Plaintiff sought Tylenol and asked about the status of her lip balm request. (DSUMF 39). Plaintiff was given a "Tylenol Pack" and Vaseline on October 8, 2007 by a Nurse Mary. (DSUMF 41). When Plaintiff received the medication, in her pod, she told the nurse that she was in a car accident and that she was having pain. (DSUMF 42). She also told the nurse that she was not sure if she was hurting from the accident or from sleeping on the floor. (DSUMF 42).

---

[2] Plaintiff does not specifically dispute this material fact. In her deposition, Plaintiff indicated that it was not explained to her, by jail personnel, how to get medical care and that she instead learned of the process through other inmates. (Smith Dep. p. 33-34). She does not indicate when she was told by the inmate that she should fill out the request form to seek medical care. In her later dated affidavit, Plaintiff states that she didn't know about the medical request forms while she was in the holding cell and that once she was released from the holding cell (4 days after her booking) she was told about the process and immediately sent in a request. (Smith Affidavit ¶¶ 7-8). The two recitations of events are not necessarily inconsistent. The Court would note, however, that in her deposition, when asked whether "[d]uring the four days you were in the holding cell, did you ask anyone to see a nurse?, Plaintiff responded "[n]o, because I figured my body's hurting from laying on that floor, old age." (Smith Dep. p. 34).

On October 9, October 12, and October 13, Plaintiff again sought medical care for neck and back pain. (DSUMF 45, 47, 49). These requests were forwarded to medical personnel. (DSUMF 46, 48, 50). Plaintiff was given Tylenol, after the October 13 request, and placed on a list to see the doctor. (DSUMF 50). The Tylenol is dispensed in packs containing six extra-strength capsules; inmates are given only one pack per week "because more would be hard on their liver." (DSUMF 53). Plaintiff also stopped a nurse, who was doing medical rounds, on October 14 and indicated that the Tylenol was not helping and that she wanted to see the doctor; the Nurse indicated that she could give Plaintiff Tylenol and place her on the list to see the doctor. (DSUMF 56).

On October 19, Plaintiff requested more Tylenol, which she was given. (DSUMF 63, 64). Plaintiff made another request to see the Doctor, verbally on October 20 (to a Nurse) and in a written request on October 22. (DSUMF 65, 67). Plaintiff finally saw a doctor, Dr. Stephen Cullinan on October 24, 2007. (DSUMF 69). Dr. Cullinan performed an examination, noted tenderness in Plaintiff's neck, found that she had full range of motion in her neck, concluded that there was no evidence of disease, and advised Plaintiff that her condition would improve. (DSUMF 70-74). Dr. Cullinan did not prescribe medication "because her exam was entirely normal" and because she did not have a serious medical need. (DSUMF 75 and 76).

On October 25, 2007, Plaintiff completed another request form, outlining her medical issues and complaining about the care she received. (DSUMF 80). This

request was directed to Jail Superintendent Earl Helm who started to investigate. However, the investigation was stopped because Plaintiff was released from the Tazewell County jail on October 26, 2007 and transferred to the DeWitt County Jail. (DSUMF 81-82). For the two weeks that she was at the DeWitt County Jail, Plaintiff was seen by a nurse but did not receive any medication. ((DSUMF 91-92).

Upon discharge from the DeWitt County Jail, Plaintiff visited an emergency room, x-rays were taken, and she was prescribed two medications, one of which was Ultram. (DSUMF 94). She was referred to Dr. Mehta, whom she saw on November 21, 2007. (DSUMF 95). After a physical examination, Dr. Mehta diagnosed "crepitus" and arthritis, attributed Plaintiff's pain to muscle strain, did not order further testing, and prescribed some medication and physical therapy. (DSUMF 96 to 99). Plaintiff did not return to Dr. Mehta for a follow-up visit nor did she complete physical therapy. (DSUMF 99 and 104). Dr. Mehta did, however, indicate that Plaintiff's complaints were consistent with her being in a car accident. (Plaintiff's Statement of Undisputed Material Fact "PSUMF" 10).

During the time in question, medical care at the Tazewell County Jail was contracted to Health Professionals, Ltd ("HPL"). (DSUMF 3). HPL employed the nurses who cared for Plaintiff and Dr. Cullinan was its Chief Medical Director. (DSUMF 9). Dr. Cullinan also was the Medical Director for the Tazewell County Jail. (DSUMF 10). The jail is serviced by various nurses and Dr. Cullinan visits the jail "periodically" but is available at all times by telephone. (DSUMF 5 – 8). The jail and HPL engaged in quality control meetings every three to four months.

(DSUMF 11). According to Superintendent Helm, the contract with HPL was negotiated by the "county administrator" which itself did not have a mechanism for evaluating the HPL's performance (Earl Helm Dep. p. 49). As noted above, it is undisputed that when Plaintiff complained of the medical care that she received at the Tazewell County Jail, that complaint was forward to Superintendent Helm who started to investigate the claim. (DSUMF 82).

### STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001); *See also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and

support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## DISCUSSION

Plaintiff has abandoned her claims against Sheriff Huston in his individual capacity. Therefore judgment is GRANTED in favor of Sheriff Huston, in his individual capacity, and against Plaintiff.

Plaintiff's only claims are that the individual Defendants Rasmussen and Vansaghis violated her Fourteenth Amendment rights, pursuant to 42 U.S.C. §

1983, when they failed to provide medical care after the accident, and that Sheriff Huston maintained a policy and practice of failing to provide adequate medical care to pretrial detainees at the Tazewell County Jail.

## A. Claims against Rasmussen and Vansaghis

### 1. Federal Claims

The Due Process Clause of the 14th Amendment applies to pretrial detainees in the same manner that the Cruel and Unusual Punishment Clause of the 8th Amendment applies to convicted persons. *See Minix v. Canarecci*, 597 F.3d 824, 830-831 (7th Cir. 2010). Accordingly, prison officials may not be deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976); *Farmer v. Brennan*, 511 U.S. 825, 1977-1978 (1994). Prison doctors, in addition to prison guards, are prohibited from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. 104-105. In delineating the necessary level of culpability, the Supreme Court held that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . .[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment. *Farmer*, 511 U.S. 838-839.

In order to prevail on her claims, then, Plaintiff must show that "(1) [she] [] suffered an objectively serious harm that presented a substantial risk to [her] safety, and (2)

the defendants were deliberately indifferent to that risk. *Minix*, 597 F.3d at 831. A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)). A defendant is deliberately indifferent if he "knows[s] of the serious risk to the prisoner's health . . . and [] consciously disregard[s] that risk/need." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). The Court finds, as a matter of law, that Plaintiff had neither a serious medical need nor were Defendants Rasmussen and Vansaghis deliberately indifferent to any such need.

The evidence reveals that Plaintiff was not restrained by a seatbelt, that her feet were shackled, that her hands were shackled to her waist, that she was involved in a car accident where the vehicles were travelling at less then 10 miles per hour, that she hit her head and knees on the partition between the front and back seats, and that she did not complain of any pain or injury to either Rasmussen or Vansaghis. The evidence also reveals that no doctor has diagnosed Plaintiff with a serious medical need. Therefore, Plaintiff argues that Plaintiff's serious medical need, and the necessity of a doctor, was obvious to a lay person given the circumstances of the accident. *Zentmyer v. Kendall County, Ill*, 220 F.3d 805, 810 (7th Cir. 2000).

Plaintiff has presented no case authority or convincing argument that the Constitution requires that correctional officers immediately summon the services of

a doctor after a car accident similar to the one at issue. It is undisputed that the accident occurred in a parking lot and under low speeds. Plaintiff has presented no evidence or opinion evidence that such an accident would likely cause a serious medical need. Indeed, it is undisputed that Plaintiff did not complain of any injury at the time of the accident. Nor is there any evidence that Plaintiff exhibited any outward signs of injury like a contusion, cut, scrape, or any other sign of obvious injury that would signal to a layperson that she requires medical attention. That is, there is not even a subjective complaint of pain from which any jury could find that Plaintiff suffered a serious injury. *See e.g. Cooper v. Casey*, 97 F.3d 914, 916-917 (7th Cir. 1996). While Plaintiff need not show that her condition was life threatening, she must at least show that denial of care was the "denial of the minimal civilized measure of life's necessities." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (quotation marks and citations omitted). Plaintiff has simply made no showing that, given the circumstances of this case, Defendants were obligated to provide immediate medical care. Nor is there any argument that any delay in receiving care caused any harm to Plaintiff. *See Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007). In any event, Plaintiff cannot show that Rasmussen or Vansaghis were deliberately indifferent to any medical condition.

First, there is no evidence that either Defendant knew that Plaintiff was injured. There is no dispute that Plaintiff failed to inform them that she was injured either immediately after the accident or at any point while she was incarcerated. In this respect, it is irrelevant whether Plaintiff felt intimidated by

the correctional officer's directions that she be quiet. Plaintiff's state of mind is not at issue: what is at issue is whether the correctional officers had a sufficiently culpable state of mind. *Johnson*, 444 F.3d at 585. Plaintiff makes no effort to even show that the officers were aware, or should have been aware, that she had hit her head and knees. In particular, and notwithstanding Plaintiff's arguments, Plaintiff has pointed to *no* evidence in the record that either Defendant was aware of the fact that she had hit her head and knees. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (a plaintiff must show that the defendant is "subjectively aware" of a medical need and "disregarded an excessive risk"). At most, Defendant's failure to affirmatively assess Plaintiff's condition after the accident was negligent – negligence, however, is insufficient to make out a deliberate indifference claim. Plaintiff's claims simply do not rise to the level of a constitutional violation.

**2. State Claims**

Illinois' Tort Immunity Act provides:

Neither a local public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but this Section shall not apply where the employee, acting within the scope of his employment, knows from his observation of conditions that the prisoner is in need of immediate medical care and, through willful and wanton conduct, fails to take reasonable action to summon medical care. Nothing in this Section requires the periodic inspection of prisoners. 745 ILL. COMP. STAT. § 10/4-105.

The Seventh Circuit has observed that liability pursuant to this state statute would be consistent with liability on a deliberate indifference claim. *Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007) (noting that "our decision of Williams's

federal deliberate indifference claim is dispositive of this issue"); *see also Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) (noting that the state's "willful and wanton" standard is "remarkably similar" to the deliberate indifference standard). Therefore, this claim must also fail for the reasons set forth above.[3]

**B. Claims against Sheriff Huston in his Official Capacity**

Plaintiff's claim against the Sheriff is essentially a claim against the entity for which he is an agent, namely, Tazewell County. In order to prevail on such a claim, Plaintiff must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978). Plaintiff's official capacity suit fails for the simple reason that she has failed to show that either the individual Defendants, or any other person, have deprived her of any of her constitutional rights. Put another way, without establishing that her constitutional rights were violated, Plaintiff cannot prevail on a claim that a policy led to any supposed deprivation. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"); *See e.g. Sow v. Fortville Police Dept.*, ___ F.3d ___, 2011 WL 477050, *4 (7th Cir. 2011).

With respect to Rasmussen and Vansaghis, for the reasons set forth above, Plaintiff has failed to establish a constitutional violation. With respect to the

---

[3] To the extent that Plaintiff is attempting to amend her complaint, through argument in her response brief, to include an excessive force claim, that motion is DENIED.

medical care that Plaintiff received while housed at the Tazewell County Jail, the evidence reveals that Plaintiff did not have a serious medical need. Plaintiff complained of pain and was given pain medication within a few days of the complaints. There is no showing that any of the medical personnel observed any outward signs of distress or injury. There is no showing that any delay occasioned in responding to requests for pain medication, that the failure to provide perhaps stronger medication, or the delay in conducting a physical examination exacerbated her condition. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). There is simply no showing that any person at the jail was aware that Plaintiff's pain was so *severe* that it posed an *excessive* risk of harm. No reasonable jury would find otherwise.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Robert M. Huston, Eric Rasmussen, and Kelly Vansaghis (Doc. 31) is GRANTED. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiff.

CASE TERMINATED.

Entered this 18th day of March, 2011

                                                s/ Joe B. McDade
                                                JOE BILLY MCDADE
                                          United States Senior District Judge